UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

—————————————————

In re:

MICHIGAN BIODIESEL, LLC,                          Case No. DK 10-05786
                                                  Hon. Scott W. Dales
                                                  Chapter 7

          Debtor.
_____/

THOMAS R. TIBBLE, Trustee,
                                                  Adv. Pro. No. 13-80270
          Plaintiff,

v.

FARMERS GRAIN EXPRESS, INC. and
JACOBSON TRANSPORTATION
COMPANY, INC.,

          Defendants.
_____/

THOMAS R. TIBBLE,                                 Adv. Pro No. 13-80263

          Plaintiff,

v.

TRACY DANIELS,

          Defendant.
_____/

OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
              Chief United States Bankruptcy Judge

I. INTRODUCTION

Under chapter 5 of the Bankruptcy Code, avoidance and recovery are separate remedies

available to a bankruptcy trustee, found in separate sections, with different purposes, discrete

elements of proof, and distinct limitation periods.  The present motion for partial summary judgment puts the distinction between avoidance and recovery to the test.  To  resolve  it,  the court must decide whether subsequent transferees who were not named in the judgment avoiding the initial transfer, may require the trustee in a later § 550 recovery proceeding to re-prove the avoidability of the transfer.

In a prior adversary proceeding, Thomas R. Tibble, as chapter 7 trustee of the estate of Michigan BioDiesel, LLC (the "Debtor"), sought and obtained from this court a judgment under § 549 avoiding a substantial post-petition payment the Debtor made to Tall Pine Trading, LLC ("Tall Pine").  In the current adversary proceedings, filed within one year after the avoidance of the payment, Mr. Tibble (the "Trustee") seeks to recover under § 550(a) the funds that he alleges Tall Pine transferred to defendants Farmers Grain Express, Inc., Jacobson Transportation Company, Inc., and Tracy Daniels (the "Defendants").

As part of their defense, the Defendants contend that *res judicata* principles, simple fairness, and perhaps the Due Process Clause itself, require the Trustee to re-establish the avoidability of the transfer to Tall Pine as a prerequisite to recovery in this later action.  The Trustee disagrees, and has filed in each adversary proceeding a Motion for Partial Summary Judgment Barring Defendant from Relitigating the Court's Avoidance of the Debtor's Transfer to Tall Pine Trading, L.L.C. (collectively, the "Motion) (Adv. Pro. No. 13-80263 at DN 28; Adv. Pro. No. 13-80270 at DN 28).  In his Motion, the Trustee asserts that subsequent transferees of an unauthorized post-petition transfer can only raise § 550 defenses in a recovery action, even when they were not parties to the initial avoidance proceeding.

The court held a hearing on April 23, 2014 in Kalamazoo, Michigan, to consider the Motion and the Defendants' opposition.  For the following reasons, and notwithstanding

thoughtful argument and authority to the contrary, the court concludes that a trustee who pursues § 550 recovery in a later proceeding need only prove that the court avoided the initial transfer in the first action; he need not establish anew the *avoidability* of the initial transfer as part of his *prima facie* case under § 550(a)(2).

## II. JURISDICTION

The court has jurisdiction over the Debtor's bankruptcy case pursuant to the grant of that power to the United States District Court under 28 U.S.C. § 1334(a), and the reference of the case and this adversary proceeding pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). The adversary proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (O). Because the court's decision today is interlocutory, it does not implicate the concerns underlying *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and similar authorities.

## III. ANALYSIS

A.    Background

The Debtor filed for relief under chapter 11 on May 2, 2010. Before the court converted the case to chapter 7, the Debtor received $1,321,692.50 in tax credit payments from the Internal Revenue Service for bio-fuels the Debtor claimed were processed in its Michigan facility and then shipped to end users. Without bankruptcy court permission, the Debtor transferred $998,412.32 of these payments to Tall Pine, an entity owned and operated solely by Tracy Daniels.

On December 14, 2011, the Trustee filed Adversary Proceeding No. 11-80621 against Tall Pine and Mr. Daniels seeking to avoid and recover the $998,412.32 transfer (the "Funds")

pursuant to 11 U.S.C. §§ 549 and 550.[1]  On the same day, the Trustee also filed an emergency motion to enjoin Tall Pine and Mr. Daniels from transferring the Funds.  Both Tall Pine and Mr. Daniels filed a response to the Trustee's motion for a preliminary injunction.  After holding an evidentiary hearing, the court denied the motion for preliminary injunction.  Later in the Tall Pine AP, Mr. Daniels filed a motion to dismiss, and Tall Pine answered the Trustee's complaint.

In their joint discovery statement filed February 21, 2012, the Trustee, Tall Pine, and Mr. Daniels agreed that the court should dismiss Mr. Daniels from the adversary proceeding, which the court did.  The dismissal was without prejudice to the Trustee's right to file a separate complaint against Mr. Daniels, including claims for recovery of any avoided transfers pursuant to § 550.  The Trustee then amended his complaint in the Tall Pine AP, and Tall Pine timely filed an answer and a counterclaim.

After an opportunity for discovery in the Tall Pine AP, the Trustee filed a motion for summary judgment to which Tall Pine never responded, perhaps because by then its counsel had withdrawn from representation with Mr. Daniels's express consent.

Despite Tall Pine's failure to oppose the Trustee's motion, the court carefully considered the pleading and, after deliberating, granted the motion for summary judgment and announced its intention to avoid the initial transfer of the Funds.  The court could not enter judgment at that time, however, because Tall Pine's counterclaim remained pending.  *See* Fed. R. Civ. P. 54. After holding a pre-trial conference and after Tall Pine took no further action on its counterclaim, the court entered judgment in favor of the Trustee on October 29, 2012, avoiding the transfer under § 549, dismissing the counterclaim, and requiring Tall Pine to pay $1,201,293.62 on account of the avoided transfer and another transaction at issue in the Tall Pine AP.

---

[1] For convenience, the court will refer to *Tibble v. Tall Pine Trading, LLC*,  Adv. Pro. No. 11-80621 (Bankr. W.D. Mich.), as the "Tall Pine AP."

On October 7 and 9, 2013, the Trustee filed the currently pending adversary proceedings, this time under § 550 seeking recovery of a portion of the Funds that Tall Pine allegedly transferred to the Defendants.

The Trustee filed his motion for summary judgment solely on the legal question of whether the court must allow the Defendants to re-litigate the Trustee's § 549 avoidance action against Tall Pine.

B.      Summary Judgment Standards

A court should enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Either party may support its factual position by "citing to particular parts of materials in the record," such as depositions, affidavits, stipulations, admissions, or other such materials. Fed. R. Civ. P. 56(c)(1).

Here, as noted above, the Trustee's Motion and the Defendants' responses raise only legal issues. This aspect of the parties' dispute, therefore, is ripe for summary judgment.

C.      Analysis

The Defendants' insistence that the court must require the Trustee to re-prove the case for avoidance in these adversary proceedings seeking recovery seems inconsistent with the well-established separation between avoidance and recovery that our Circuit (and others) have recognized for a long time. As the Sixth Circuit explained in a preference case, the Bankruptcy Code "specifically 'separates the identification of avoidable transfers (§ 547) from the identification of those who must pay (§ 550)....'" *Harrison v. Brent Towing Co. (In re H & S*

*Transp. Co., Inc.)*, 939 F.2d 355, 358 (6th Cir. 1991) (quoting *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186, 1196 (7th Cir. 1989)).

Years later, while maintaining the distinction, our Circuit observed that "avoidance and recovery are distinct concepts and processes" that "are addressed in two separate sections of the code." *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003). Indeed, "the fact that avoidance is a necessary precondition to § 550 recovery does not imply that avoidance is a sufficient condition for § 550 recovery or that avoidance automatically triggers § 550 recovery." *Id.*, 322 F.3d at 427. The two remedies, although "related conceptually," must nevertheless "be kept analytically separate." *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528 (6th Cir. 2003). This oft-repeated distinction between avoidance and recovery prompts the court to treat the Defendants' arguments with considerable skepticism, notwithstanding their intuitive appeal to fairness.

The question of whether the Defendants may be permitted to re-litigate (or collaterally attack) the court's judgment avoiding the transfer of the Funds entered in the Tall Pine AP must begin with an examination of § 550, the statute authorizing a trustee to recover property the initial transfer of which has been avoided under various predicate sections of the Bankruptcy Code. *Toibb v. Radloff*, 501 U.S. 157, 162 (1991) (especially in bankruptcy cases, courts must adhere closely to the text of the statute). Section 550 provides, in relevant part, as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

\* \* \*

(f) An action or proceeding under this section may not be commenced after the earlier of—

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought;

or

(2) the time the case is closed or dismissed.

11 U.S.C. § 550.  As is plain from § 550(f), the *recovery* provision has a limitation period distinct from the periods for seeking *avoidance* prescribed in § 549(d) (which applies to the Debtor's post-petition transfer to Tall Pine) or § 546 (for actions under §§ 544, 545, 547, 548 and 553).  If the Defendants are correct, subsequent transferees may assert any defense to avoidance that might have been available to the initial transferee—including statute of limitations defenses which, in this case, would effectively lead to dismissal.[2]

Consistent with the analytical separateness of avoidance and recovery mentioned above, courts have generally read § 550 as requiring a trustee to avoid the underlying transfer before (or at least while) seeking to recover the property or its value from a subsequent transferee.  *In re H&S Transportation Co., Inc.*, 939 F.2d at 359; *Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577 (10th Cir. 1992); *Geltzer v. Fur Warehouse, Ltd. (In re Furs by Albert & Marc Kaufman, Inc.)*, 2006 WL 3735621 (Bankr. S.D.N.Y. 2006); *Williams v.*

---

[2] These adversary proceedings were commenced by filing complaints on October 7 and 9, 2013, more than two years after the date of the transfer from the Debtor to Tall Pine on July 11, 2011. *See* 11 U.S.C. § 549(d).

*Mortillaro (In re Restaurant Recycling Remediation, Inc.)*, 314 B.R. 62 (Bankr. W.D. Pa. 2004); *Yoppolo v. Liberty Mortgage (In re Morgan)*, 276 B.R. 785 (Bankr. N.D. Ohio 2001). This is a natural reading of § 550.

Once the challenged transfer is avoided, the trustee may recover the property—in the same or a separate action—from the transferees or from people who benefited from the transfer, making them personally accountable to the estate for the return of the property or its value. *In re Morgan*, 276 B.R. at 789-90. In other words, recovery can be used to supplement the remedial effect of the avoidance, but a trustee must avoid a transfer as a prerequisite to recovery under § 550(a).

Other courts, taking a more relaxed view of the statute, have concluded that a trustee (without first suing an initial transferee) may recover the transferred property or its value from a subsequent transferee as long as the trustee can prove that the initial transfer is *avoidable* (though not yet avoided). *IBT Int'l., Inc. v. Northern (In re Administration Services, Inc.)*, 408 F.3d 689 (11th Cir. 2005) (Once the plaintiff proves that an *avoidable* transfer exists he can then skip over the initial transferee and recover from those next in line); *Kendall v. Sorani (In re Richmond Produce Co., Inc.)*, 195 B.R. 455 (N.D. Cal. 1996) (same); *Brown v. Phillips (In re Phillips)*, 379 B.R. 765 (Bankr. N.D. Ill. 2007); *Leonard v. Optimal Payments Ltd. (In re National Audit Defense Network)*, 332 B.R. 896 (Bankr. D. Nev. 2005).

Indeed, as a practical matter, in some cases avoidance of a transfer is all that is required to make an estate whole, as in cases involving transfers of non-possessory interests such as security interests or other liens. *Official Committee of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 746 (Bankr. S.D.N.Y. 2008)

(avoidance alone may suffice to restore the estate); *Gold v. New Century Mortgage Corp. (In re Salinitro)*, 355 B.R. 15 (Bankr. E.D. Mich. 2006) (citing cases).

The Defendants, however, argue that due process concerns will arise if the court does not permit them to challenge the court's judgment avoiding the Debtor's transfer of the Funds to Tall Pine. In effect, the Defendants argue that a trustee must bring an avoidance claim in every single recovery action when he pursues separate adversary proceedings against the initial transferee and any subsequent transferees. Their position is not without support. *See, e.g., M. Fabrikant & Sons, Inc.*, 394 B.R. at 746 (*citing Leshin v. Welt (In re Warmus)*, 276 B.R. 688, 694-95 (S.D. Fla. 2002)).

The cases that tend to favor the Defendants' interpretation are principally premised on the perceived unfairness of saddling subsequent transferees with the outcome of an avoidance action in which they did not get to participate or which was the product of a default or consent judgment. *Sims v. DeArmond (In re Lendvest Mortgage, Inc.)*, 42 F.3d 1181 (9th Cir. 1994); *Stathopoulos v. Alford (In re McMillin)*, 448 B.R. 847, 851 (M.D. Fla. 2011), *rev'd in part on other grounds*, 482 Fed. Appx. 454 (11th Cir. 2012); *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities, LLC*, 480 B.R. 501, 521-22 (Bankr. S.D.N.Y. 2012); *Morris v. Emprise Bank (In re Jones Storage and Moving, Inc.)*, 2005 WL 2590385 (Bankr. D. Kan. 2005); *M. Fabrikant & Sons, Inc.*, 394 B.R. at 746; *Thompson v. Jonovich* (*In re Food & Fibre Protection, Ltd.*), 168 B.R. 408 (Bankr. D. Ariz. 1994). Some of the cases rely on basic principles of claim or issue preclusion (*i.e., res judicata* and collateral estoppel); others simply allude to due process concerns. The court, therefore, must view these arguments through two lenses, one procedural and the other constitutional.

First, the court does not regard as persuasive the cases that suggest that a default judgment avoiding a transfer or, for that matter, a consent judgment, can be disregarded in a later adversary proceeding under § 550 against a subsequent transferee.  Both types of judgments, though the product of default or negotiation, are nevertheless judgments, the finality of which is supported by strong public policies favoring obedience to the court's process and settlement.  A judgment by default is as final as any other, and if the judgment includes a request for declaratory relief (as avoidance judgments do), the court, rather than the clerk, enters judgment. *See* Fed. R. Civ. P. 55(b)(2) (court enters judgment other than judgment for sum certain) and 55(c) (Fed. R. Civ. P. 60(b) standards apply to setting aside default judgment).  In our Circuit, consent judgments have a contractual aspect, but they are no less final simply because they are the product of negotiation.  *Northridge Church v. Charter Township of Plymouth*, 647 F.3d 606, 615 (6th Cir. 2011); *Vanguards of Cleveland v. City of Cleveland*, 753 F.2d 479, 484 (6th Cir. 1985) ("A consent decree, although founded on an agreement of the parties, is a final judgment.").  Both types of resolution require review and approval by a judge, and for these reasons the opinions upon which the Defendants rely are not particularly persuasive.  In any event, the court rendered judgment in the Tall Pine AP after giving the (admittedly unopposed) motion for summary judgment careful consideration as set forth in the court's opinion.  *Tibble v. Tall Pine Trading LLC*, Adv. No, 11-80621, Slip Opinion (DN 40), (Bankr. W.D. Mich. Oct. 16, 2012).

The court suspects that the impulse to permit subsequent transferees to be heard on the question of avoidance would have been the same had the original judgments in those cases been entered after full trial.  If avoidability is viewed as an element of recovery, it is easy to understand the reluctance of those courts to preclude subsequent transferees from being heard on

the avoidance issues.  In other words, the Defendants' cases and their argument suggest that subsequent transferees are indispensable parties in an avoidance action, and cannot be bound by a prior determination of avoidance if they were not heard on the question.  Nevertheless, given the Sixth Circuit's admonition to keep avoidance and recovery analytically distinct, this court will not assume that the Defendants were necessary parties to the Tall Pine AP without conducting a more thorough inquiry.

Neither § 549 nor § 550 identifies the indispensable parties to avoidance and recovery actions.  As suggested during oral argument and elsewhere,[3] the question implicates Federal Rule of Civil Procedure 19 (Required Joinder of Parties), which provides as follows:

> **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > **(i)**     as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > **(ii)**     leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a) (applicable here by Fed. R. Bankr. P. 7019).  In the Tall Pine AP, the Trustee simply sought a declaration that the Debtor lacked authority to transfer the Funds to Tall

---

[3] *M. Fabrikant & Sons*, 394 B.R. at 744 (noting that the Bankruptcy Code does not identify proper, necessary, or indispensable parties, so the court must look to the Federal Rules of Civil Procedure).

Pine, and that the Trustee could recover the Funds from Tall Pine under § 550(a)(1).  Therefore, looking at subparagraph (A), the Defendants' absence from the Tall Pine AP did not prevent the court from according complete relief among existing parties, namely Tall Pine and the Trustee. *See* Fed. R. Civ. P. 19(a)(1)(A).

Next, looking at the second part of subparagraph (B), the court considers whether any of the Defendants might have claimed an interest relating to the Tall Pine AP or were "so situated" that disposing of the case in their absence exposed the Trustee or Tall Pine to a substantial risk of incurring multiple or inconsistent obligations.  Fed. R. Civ. P. 19(a)(1)(B)(ii).  No one has alleged any such risk befalling the Trustee or Tall Pine so, consequently, the court finds that Federal Rule of Civil Procedure 19(a)(1)(B)(ii) does not suggest the Defendants were indispensable.

The remaining question, admittedly a closer one, is whether "as a practical matter," disposition of the Tall Pine AP without the Defendants' participation "impair[ed] or impede[d]" their "ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i).  To make this determination the court will start by endeavoring to identify the Defendants' interest.

Certainly, the Defendants were not parties to the initial transfer of the Funds from the Debtor, a transaction between the Debtor and Tall Pine.  As subsequent transferees, they became interested in the Funds only after the initial transfer.  The Defendants (other than Mr. Daniels) were strangers to this first transaction—the only transaction under review in the Tall Pine AP after the court denied the Trustee's motion for preliminary injunction.

It is possible, however, that the Defendants received the Funds or some portion of them from Tall Pine before or during the pendency of the Tall Pine AP.  If so, the court could conclude they had a current "interest" in the Funds that was the subject of the Tall Pine AP.

Nevertheless, nothing that occurred in the Tall Pine AP actually divested the Defendants of any property interest, given the limited declaratory nature of the avoidance remedy. An "avoidance merely terminates the [initial] transferee's legal rights in the property vis-a-vis the trustee; the avoidance of the property interest, however, does nothing to put the bankruptcy estate in possession of the property." *In re Salinitro*, 355 B.R. at 19 (quoting *In re Morgan*, 276 B.R. at 792). Section 541(a)(3) confirms that avoidance by itself does not bring the property into the estate: the property is included within the estate upon recovery under § 550 and similar provisions.[4]

At oral argument, in response to the Defendants' comments about due process, the court asked them to identify the property interest that the Due Process Clause was meant to protect, but they were uniformly unable to articulate any.[5] Nevertheless, although the court is presently uncertain whether the Defendants had an interest in the Funds during the pendency of the Tall Pine AP, the court will assume, *arguendo*, that they held an interest and therefore had an "interest" in the outcome of the earlier litigation.

The court's judgment in the Tall Pine AP determined that the Debtor lacked authority to convey title in the Funds to Tall Pine, and in so doing indirectly called into question Tall Pine's authority to convey the Funds to the Defendants. Viewed in this way, the Defendants find

---

[4] The automatic preservation of avoided transfers under § 551 also brings property into the estate under § 541(a)(4), but § 551 preserves transfers "only with respect to property of the estate." 11 U.S.C. § 551. Because the Funds had been transferred away from the estate post-petition, they were not property of the estate at the time of the avoidance and, therefore, the automatic preservation mechanism of § 551 did not divest the Defendants of any property. Section 551 has a greater role to play in cases involving avoidance of non-possessory interests in estate property, such as liens and mortgages. *See, generally, In re Salinitro*.

[5] Colloquially speaking, the Defendants had an interest in not being sued if the Trustee were successful in avoiding the transfer of the Funds from the Debtor to Tall Pine, given that avoidance often "triggers" recovery. *Burns*, 322 F.3d at 427. Certainly, if the Trustee had been unsuccessful in the Tall Pine AP, his misfortune would inure to the Defendants' benefit by relieving them of the burden of defending a suit for recovery under § 550(a). In that limited sense, the Defendants had an interest in the Tall Pine AP, but the court is unwilling to find that nipping a later lawsuit in the bud is among the interests protected by Rule 19 or the Due Process Clause, both of which concern themselves principally with property and liberty interests. *See* Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1602 (discussing the constitutional dimensions of Rule 19).

themselves in the same position as any transferee who takes property from a grantor with void or voidable title.  In these situations, the law provides protection to similarly situated defendants, such as holders in due course, buyers in the ordinary course of business, or certain *bona fide* purchasers of real estate.[6]

Significantly, Congress provided subsequent transferees with the very same defense in § 550(b), available in similar contexts to any *bona fide* purchaser.  The Defendants can keep the property, which they derived from a grantor with doubtful title, if they can prove they received it "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability" of the transfer to Tall Pine.  11 U.S.C. § 550(b)(1).[7] Because the long-established "BFP" defense allows the Defendants "as a practical matter" to protect any interest they may have in the Funds, even if they were not parties to the Tall Pine AP, the court does not regard subsequent transferees as "indispensable" to an avoidance action. Fed. R. Civ. P. 19(a)(1)(B)(i).

As for their due process argument, the Defendants suggest that the court's judgment in the Tall Pine AP may have been mistaken, or at least the court may have reached a different result if Tall Pine had been a more active litigant.  The court will not entertain this argument from Mr. Daniels, given his close relationship to Tall Pine, as well as his role as a party and his successful request to be dismissed from the Tall Pine AP,[8] but the argument is fairly made by the other Defendants as it implicates the primary goal of the Due Process Clause—the prevention of erroneous decisions affecting life, liberty, and property.

---

[6] *See* M.C.L. § 440.1201(2)(i) & 44.9320 (buyer in ordinary course); *Id.* § 440.3302(1)(b) (holder in due course); *Id.* § 565.29 (unrecorded instrument void against subsequent purchaser in good faith and for a valuable consideration).

[7] The good faith requirement prevents transferees from "washing" property through innocent intermediaries; the requirement of lack of knowledge of avoidability protects truly innocent actors; and the value requirement makes clear that gratuitous transferees must disgorge the property, even if they are innocent.

[8] Mr. Daniels might have been heard on the issues the court ultimately decided if he had not pursued his own dismissal and consented to the withdrawal of Tall Pine's former counsel at a crucial point in the Tall Pine AP.

First, the text and structure of the Bankruptcy Code, including § 550, undermine the Defendants' due process argument: the Code contains several hallmarks of Congressional intent to allow a trustee to sue a subsequent transferee in a separate proceeding without having to re-prove that the transfer was avoidable, but only after a defendant has notice and an opportunity to be heard.  This is apparent in the statutory defense available to subsequent transferees under § 550(b)(1), which substantially mitigates any hardship visited upon those who did not have an opportunity to oppose the original claim for avoidance.  Specifically, the § 550(b) defense permits a defendant to test whether the court correctly concluded that the Debtor transferred the Funds without authority: in proving that they lacked "knowledge of the voidability" of the transfer, the Defendants may argue that the transfers were not "avoidable" in the first place.  If the transfers were not "voidable," the Defendants could not be charged with notice of their "voidablity." 11 U.S.C. § 550(b)(1).  By availing themselves of this defense, the Defendants could revisit the issue of voidability without requiring the Trustee to re-prove his case and without attacking the finality of the court's earlier judgment.  Of course, § 550(b)(1) provides an affirmative defense on which the Defendants, rather than the Trustee, will have to shoulder the burden of proof.

On the other hand, if the court reached the correct conclusion regarding avoidance, the Defendants could still prevail in the recovery action if they lacked *knowledge* of the voidability, so long as they also gave value in good faith.  In other words, the Trustee's earlier victory in the Tall Pine AP will mean nothing in the recovery action if the Defendants establish their BFP defense.  The liberal defense available to subsequent transferees under § 550(b)(1) may help to explain Congress' decision to separate avoidance from recovery by, *inter alia*, establishing distinct limitation periods, despite the seeming risk that a declaratory judgment against an initial

transferee might impose on non-party subsequent transferees.  Through § 550's BFP defense, Congress gave subsequent transferees an opportunity to re-open the door on avoidance, but shifted the burden of proof by requiring them to establish that they did not have knowledge of the voidability of the transfer even if it was in fact avoided as to the initial transferee.

Furthermore, the legislative history of § 550 also demonstrates that Congress gave subsequent transferees some portion of the initial transferee's defense by limiting recovery "to the extent that a transfer is avoided…."  11 U.S.C. § 550(a).  The House Report accompanying the enactment of § 550 explains the phrase as follows:

> The words "to the extent that" in the lead in to this subsection [550] are designed to incorporate the protection of transferees found in proposed 11 U.S.C. §§ 549(b) and 548(c).

H.R. Rep. 95-595, 375-376, 1978 U.S.C.C.A.N. 5963, 6331-32.  From this passage, it is clear that Congress made available to subsequent transferees one defense that an initial transferee could assert.  This suggests that the legislature never intended to give subsequent transferees the entire panoply of defenses to avoidance.[9]

If there is any unfairness in the court's construction of § 550 (and its rejection of Defendants' request to require the Trustee to re-prove his avoidance case or to allow them to assert limitations and other defenses to avoidance), it might be found in Congress's allocation of the burdens of proof.  Congress, however, has a free hand in assigning such burdens in civil proceedings.  *Lavine v. Milne*, 424 U.S. 577, 585 (1976) ("Outside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment.").  In the recovery context, the Trustee must establish only that he

---

[9] The canon of statutory construction formally known as *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others") comes to mind.

avoided the transfer and that the Defendants received the same property. If he does this, he has satisfied his burden of proof, and the burden then shifts to the Defendants to establish their good faith, lack of knowledge of voidablity, and value.

Unlike the Defendants, the court views the issue of whether the original transfer is avoided not as an element of the case for recovery, since avoidance and recovery must be kept analytically separate, but as an issue of standing. For example, the plaintiff in an avoidance or recovery action must be a duly appointed or elected bankruptcy trustee (or debtor in possession). If the plaintiff is a trustee, after avoidance he is authorized to seek recovery under § 550. As an element of the recovery case he must prove: (1) the fact of the avoidance, and (2) the defendants' receipt of the property at issue in the avoidance action. It is perfectly rational for Congress to frame avoidance as a prerequisite to the trustee's standing to seek recovery, as it evidently did when it authorized the trustee to recover transferred property "to the extent" a transfer "is avoided." 11 U.S.C. § 550(a). The court attaches significance to Congress's use of the past tense in the quoted passage.

If § 550 were a criminal statute, the Defendants' constitutional arguments might find favor with the court, but § 550 is a civil, remedial statute, and the court's construction ensures that the Defendants will not be deprived of their property without due process of law. There is no constitutional infirmity in requiring a defendant to establish an affirmative defense in order to retain the very property that a trustee has persuaded the court was taken from the bankruptcy estate without authority. It is perfectly rational for Congress to conclude that the estate's creditors should not have to bear the duplicate administrative expenses the estate would incur if the Defendants' view of the statute prevailed and if the Trustee were required to prove avoidance over and over again in each successive recovery proceeding.

IV. <u>CONCLUSION & ORDER</u>

As noted above, the text and structure of the Bankruptcy Code's avoidance and recovery provisions, including distinct limitations periods and the granting of ample defenses under § 550 that are not available under § 549, coupled with the Sixth Circuit's admonition that the concepts of avoidance and recovery must be kept analytically and technically separate, persuade the court to reject the Defendants' arguments. Moreover, given these defenses and the court's view that the prior avoidance is an aspect of a trustee's standing to pursue recovery rather than an element of a *prima facie* case under § 550, the court does not believe that a subsequent transferee must be joined to an avoidance action or that a trustee must re-prove avoidance while pursuing the distinct remedy of recovery.

Certainly, if the Trustee had joined Farmers Grain Express, Inc., and Jacobson Transportation Company, Inc., to the Tall Pine AP (as he originally joined Tracy Daniels), he could have avoided the risk and expense of meeting the Defendants' arguments today. Even so, the court may not have permitted them to be heard on the question of avoidance in the first action, because technically, their only interest in opposing avoidance was to defeat recovery, and the fortuity of their joinder under the federal rules cannot affect substantive rights. 28 U.S.C. § 2075 (rules of procedure shall not "abridge, enlarge, or modify any substantive right"). Regardless, the Trustee reasonably and properly relied on the well-established separation of the avoidance and recovery remedies, and filed his recovery counts within the applicable limitation period prescribed in § 550(f).

The court has carefully considered the arguments for and against requiring the Trustee to re-litigate the question of avoidance of the initial transfer from the Debtor to Tall Pine, and the

court's interpretation of the respective statutes relieves the Trustee (and the estate) of this burden. The court will not permit the Defendants to collaterally attack the judgment entered in the Tall Pine AP, except as provided in § 550(b)(1) regarding their good faith, knowledge of the voidability of the initial transfer, and value provided.

The court's decision will apply to both adversary proceedings in which the Trustee has sought summary judgment.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee's Motion for Partial Summary Judgment Barring Defendant from Relitigating the Court's Avoidance of the Debtor's Transfer to Tall Pine Trading, L.L.C. (DN 28 in both adversary proceedings) is GRANTED and the parties shall prosecute and defend their positions in accordance with the law as set forth herein.

IT IS FURTHER ORDERED that the Clerk shall enter a copy of this Opinion in the dockets of *Tibble v. Farmers Grain Express, Inc. et al. (In re Michigan BioDiesel, LLC)*, Adv. Pro. No. 13-80270, and *Tibble v. Daniels (In re Michigan BioDiesel, LLC)*, Adv. Pro. No. 13-80263.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Defendants, Mr. Thomas R. Tibble, John T. Piggins, Esq., Daniel R. Olson, Esq., Nicholas J. Daly, Esq., Scott R. Murphy, Esq., and Robert E. Lee Wright, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 20, 2014**



Scott W. Dales
United States Bankruptcy Judge